14CV0184

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

DALE ROBERTSON,

PLAINTIFF,

-AGAINST-

THE CITY OF NEW YORK, COMMISSIONER  RAYMOND
KELLY, POLICE OFFICER NICHOLAS CIUFFI
(SHIELD #292), POLICE OFFICER PETER MOONEY
(SHIELD #5272), POLICE OFFICER DAVIE
RODRIGUEZ (SHIELD #7607), POLICE OFFICER
CARRASQUILLO (SHIELD #567), POLICE OFFICER
GORDON BROWN (SHIELD #presently unknown,
his known by the 47th pct. of NYPD), POLICE
OFFICER DANIEL RIVERIA of the 47th pct. of
the NYPD, ROBERT T. JOHNSON, ESQUIRE, BRONX
COUNTY DISTRICT ATTORNEY, ASSISTANT DISTRICT
ATTORNEY CHRISTINE SCACCIA, ESQUIRE, OF THE
BRONX COUNTY DISTRICT ATTORNEY'S OFFICE,
                        DEFENDANTS.

COMPLAINT

(JURY TRIAL DEMANDED

PLAINTIFF DALE ROBERTSON, PRO-SE, complaining of the DEFENDANTS, respectfully

alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for damages and attorney's fees pursuant to 42 U.S.C. Sections 1983, 1985, 1986, and 1988, for the wrongful acts of DEFENDANTS CITY OF NEW YORK, POLICE OFFICERS CIUFFI (SHIELD #292), RODRIGUEZ (SHIELD #7607), PETER MOONEY (SHIELD# 5272), CARRASQUILLO (SHIELD #567), GORDON BROWN of the 47th Precinct, DANIEL RIVERIA of the 47th Precinct, POLICE COMMISSIONER RAYMOND KELLY, BRONX COUNTY DISTRICT ATTORNEY ROBERT T. JOHNSON ESQUIRE, ASSISTANT DISTRICT ATTORNEY CHRISTINE SCACCIA OF THE BRONX COUNTY"S DISTRICT ATTORNEY'S OFFICE, as Officers of the New York City Police Department and other agencies of the City of New York, all acting under color of law (state law) and pursuant to their authority , in violation of Plaintiff's rights under the Constitution and laws of the United States and of the State of New York.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. Sections 1983, 1981, 1982, 1985, 1986, 1988, and 1987, and the Fourth, Fifth, Sixth, Eigth, and Fourteenth Amendments to the United States Constitution, and as well as New York Constitution, Article 1, Sections 6 and 12.

3. Jurisdiction is invoked pursuant to 28 U.S.C. Sections 1331, 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights, malicious prosecution, false arrest or false imprisonment based on a defective or invalid warrant, reckless investigation, abuse of process, denial of due process of law, the intention infliction of emotional distress, intentional submission of false statements and documents, defamation, slander, libel, perjury, conspiracy committed to deprive the plaintiff of his constitutionally guaranteed rights, negligence by supervisors to prevent conspiracy committed intentionally against the plaintiff, fraud, excessive force, injurious falsehood, harassment, coercion, kidnapping, assault, conspiracy committed to interfere with the plaintiff's civil rights, neglect to prevent violation of the plaintiff's constitutional and civil rights as well as the racially biased, inhumane and cruel treatment of the plaintiff committed by the defendant.

4. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. Section 1367 as to any and all of plaintiff's claims arising under New York State Law as such claims share a common nucleus of operative facts with plaintiff's federal claims herein. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. Section 1402(b) as well due to the criminal actions of the defendants.

## VENUE

5. Venue is properly laid in this District under 28 U.S.C. Section 1391(b), this being the District in which the claim arose.

## TRIAL BY JURY

6. Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed. R. Civ. P. 38(b).

## DECLARATORY JUDGEMENT

7. Plaintiff requests permanent injunctive relief and declaratory judgement  in the pending state action of People v. Dale Robertson, indictment#: 3214-2009, on the grounds the evidence used to prosecute this action was in violation of the Plaintiff's constitutional rights and  the proceeding itself violates the Constitution both Federally and in regards to the State's Constitution and as well is arbitrary to the Criminal Procedure Law of the State of New York under color of law. The plaintiff requests this Court to stop the continuance of unnecessary harassment brought in bad faith by the prosecution in the state 's pending action, which is derived from an action that unconstitutional in itself and was dismissed and the record was originally ordered sealed, the plaintiff asks the Court to review the presentation of the state's case and requests an injunction releasing the plaintiff and barring further prosecution of the plaintiff , and invoking criminal sanctions upon the defendants pursuant to 18 U.S.C. Sections, 241, 242, 371, 1016, 1018, 1506, 2071, 249, 1001(a)(1)(2)(3), 1038, 1514, 1621, 1623, invoking a stay of the State Court proceedings pursuant to 28 U.S.C. § 2283, and a Declaratory Judgement upon case#: 3214-2009, in the Bronx County Criminal Supreme Court pursuant to the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202.

## PARTIES

8. Plaintiff Dale Robertson is a young minority male (African-American) and was at all relevant times a resident in Bronx County and the State of New York as well a U.S. citizen.

9. Defendant CITY OF NEW YORK ("CITY") is and was at all relevant times a municipality of the State of New York. Defendant City operates, manages, directs, and controls the New York City Police Department ("NYPD") and other municipal agencies and departments which are responsible for carrying out law enforcement activities and judicial proceedings under color of state law.

10. Defendants Commissioner Raymond Kelly (" COMM. Kelly"), Police Officers, CUIFFI ("Cuiffi')

shield#: 292, POLICE OFFICER PETER MOONEY ("Mooney") shield#: 5272, POLICE OFFICER DAVIE

RODRIGUEZ("Rodriguez") shield#: 7607, POLICE OFFICER CARRASQUILLO("Carrasquillo") shield#:

567, POLICE OFFICER GORDON BROWN of the 47th Precinct of the NYPD ("BROWN"), Police Officer

DANIEL RIVERIA of the 47th Precinct of the NYPD ("RIVERIA"), ASSISTANT DISTRICT ATTORNEY , ESQ.,

CHRISTINE SCACCIA ("SCACCIA") of the Bronx County District Attorney's Office, ROBERT T.

JOHNSON, ESQUIRE, (BRONX D.A.") BRONX COUNTY DISTRICT ATTORNEY, are and were at all relevant

times police or corrections officers, lawyers, supervisors, and/or policy makers, agents,

servants, employed by Defendant City with the NYPD, BRoNX COUNTY CRIMINAL SUPREME COURT,

NEW YORK SUPREME COURT, and/or other CITY agencies and acting under color of state law.

11. At all times relevant hereto and in all theur actions alleged herein, Defendants were

acting under color of statues , ordinances, regulations, policies, customs and usages of

Defendant City and its agencies and departments, including the NYPD, and/or other agencies,

and/or other agencies, and/or within the scope of employment and incidental to their otherwise

lawful duties and functions as employees, servants, agents and law enforcement officers.

12. Defendant City was responsible for the hiring, training, supervision, discipline, retention,

and promotion of officers, supervisors, and employees within its agencies, including the

NYPD and/or other agencies which empolyed the Defendants herein.

FACTS

13. At all relevant times, plaintiff Dale Robertson lived on 1027 East 211th Street, in the

Bronx County of New York City. He resided in a finished basement at East 211th Street, 1027,

which was a two family duplex with a finished basement with a seperate entrance for the

ground and top floors as thet were seperate apartments. The plaintiff used the basement area

as his home and it was seperate from the ground floor apartment which had two seperate

entrances both at the side of the residence and the top floor apartment which had its own

entrances on the top fllor a front door and and rear, the plaintiff used the ground floor

front garage door as his own seperate entrance. All apartment in the residence had different

parties and were seperate dwellings at all relevant times.

14. On or about June 22, 2009, plaintiff was lawfully present at his residence by his self

engaging in a phone conversation with his friend Jacqueline Fleurinord on a shared landline

phoneline (see, plaintiff's exhibits). During this time, NYPD officers dressed in plain clothes from the 47th Precint of the NYPD, including POLICE OFFICERS GORDON BROWN and DANIEL RIVERIA, who were effecting an illegal arrest of the plaintiff through the use of illegal subterfuge of an arrest warrant for two petty offenses in order to arrest the plaintiff in connection with an unsolved murder that took place in 2006 (see, plaintiff's exhibits) , the two defendants Brown and Riveria incorrectly proceeded to arrest the plaintiff pursuant to 2 S.A.P. warrants for state violations and not crimes and were aided by the instruction of the rest of the defendants (see, plaintiff's Exhibits) who knew beforehand that the S.A.P. warrants could be used to enter a premises of any person. Regardless Defendants Brown and Riveria proceeded to attempt the illegal arrest.

14. Defendants Brown and Riveria proceeded to enter the premises by first opening the front gate and walked up the front set of stairs. They had no knowledge of where the defendant lived other than the known address, from the outside they could see that the residence was a two family duplex and had seperate apartments any search for the plaintiff had to be aided by the use of a search warrant pursuant to Federal and state law under color of law. Searh warrant pursuant to the arrest warrant that the defendants used to effectuate the arrest was not then possible pursuant to the S.A.P. warrants because the offenses were for petty violations and under color of law such offenses are not felonies / crimes and no search warrant were applicable nor could police enter any premises to search for an individual armed with this type of warrant. Regardless, Defendants Brown and Riveria proceeded to ring the front door bell on the top floor of the residence of 1027 East 211th Street and were greeted by a Nicholas Latouche, a resident of the top floor apartment, who stood in the middle of the front doorway of the top floor. After opening the front door the defendants stated to Nicholas Latouche "We have a arrest warrant for Dale Robertson, is he home?". Nicholas Latouche then responded to the defendants "I don't know if Dale, is home, he doesn't live here and besides that can I see your warrant?", The defendants Brown and Riveria then pushed Nicholas Latouche aside and proceeded to enter the top floor of the residence without any legal authority or consent.

15. After Defendants Brown and Riveria illegally entered the residence of 1027 East 211th Street, they both conducted a illegal general exploratory search without a search warrant, opening doors, drawers, closets, and compartments of the top floor apartment of the two family duplex, without any consent of resident present at the time. It wasn't until the officers realized that the plaintiff did not reside in the top floor or was not present inside the top floor apartment did they decided to move their wild goose chase to another location. The two defendants then proceeded to unlock a middle hallway door and made the discovery of a set of stairs that went two flights down into the basement area of residence. The defendants at no time asked the permission of Nicholas Latouche to search the apartment or to search another part of the duplex or let alone venture into the basement.

16. Defendants Brown and Riveria ventured on their own iniatiative down a set of stairs that led flights down into the basement area of the dwelling without any consent or search warrant, illegally. Upon reaching the bottom of the set of stairs, defendants entered the basement area without a warning or announcement. Once inside the basement area the two defendants encountered the plaintiff who was talking on a landline phone. Upon seeing Defendants Brown and Riveria, the plaintiff stated, "What are you doing here?" and "who let you in?, Please leave". The defendants Brown and Riveria replied "Are you Dale Robertson?, we have a arrest warrant from the Bronx County for an unpaid traffic ticket, you got to come with us". The plaintiff then stated "I never got that summons or ticket, I want to see that warrant, I am not going anywhere until I see that warrant, because I know that a traffic ticket doesn't permit ya'll cops to run in my apartment, I got to see that in writing, sir". The defendants instead of showing plaintiff the alleged warrant grabbed their holstered guns in a manner that suggested they were preparing to shoot if he did not comply, the shorter officer then pointed his gun at the plaintiff then stated, "Listen pal, come with us you don't want this to get ugly do ya?". Out of fear for his life the plaintiff surrendered and was arrested in his basement area apartment (see also, Plaintiff's Exhibits).

17. Defendants placed the plaintiff under arrested in the basement apartment of 1027 East 211th Street, without saying or reading him his Miranda warnings, placing a pair of handcuffs on him and rear handcuffing him. The plaintiff was led out his residence via his own entrance

the front garage door and placed in the back of an unmarked police vechile. Once in the vechile the defendants stated that they were taking him to the Bronx Central Bookings Courthouse located at 161st Street. However, the officers proceeded to led the plaintiff towards the 47th Precint located at 4111 Laconia Avenue in the Bronx County. Once arriving at the 47th precint, the plaintiff stated, "why are you bringing me here?, this is not central bookings, you have a full tank of gas, please take me to see the judge now, I want to speak to my lawyer, I have a leg injury please ". The defendants then took the plaintiff out of the vechileby grabbing his left arm and began dragging the plaintiff who was limping into the confines of the 47th precint.

18. The plaintiff was then led through the front door of the precint, and then was led to the main reception or command center desk, then defendants Brown and Riveria then stated "Tell C, we got a Dale Robertson out here for him, come and get him". After a few minutes, Defendant Mooney appeared, and then told Defendants Brown and Riveria, "hey good work, I got him from here, you boys can take off". Defendants Brown and Riveria then stated "I am going to need my cuffs, are you sure? We never told him his Miranda, you wanna a follow up?, we didn't mess up right?, we did just as you C said". Then Mooney stated, "yeah, your good, ya'll did great, right according to plan, can you uncuff for a second?, I'm going to put my cuffs on him now, after that ya'll can go good looking, great job guys".

19. Plaintiff was then moved into a side hallway were Defendants Brown and Riveria continued restraining with their physical force and the handcuffs, pushing him chest first into a side wall and holding by his arms, uncuffing plaintiff from the rear, while Mooney recuffed plaintiff to the rear with enough force to cause the defendant a extreme amount of pain. As defendants Brown and Riveria left and Mooney led plaintiff to a second floor interrogation room he stated to the plaintiff, "are you alright?" noticing that plaintiff was in pain limping while walking and making sounds caused by Mooney putting pressure on the rear-handcuffs, that were applied too tight. Plaintiff repied to Mooney no I'm not alright, you put the cuffs on too tight, your hurting me, I've got permanent nerve damage in the left arm can't you tell from the big scar on my arm, and why am I here? I don't wanna talk to you,

I would like to speak to my lawyer or see the judge, I don't want to talk to you get me out of here, now this wrong, this is fucking wrong".

20. Defendant Mooney then left the interrogation room and abandoned the plaintiff who was obviously in a state of pain, anguish, and duress. The plaintiff struggled, squirmed and tried to sit anyway that could possibly alleviate even the smallest amount of pain from the handcuffs to no avail. The plaintiff could feel the lack of circulation in his left arm at that point his only concern was his health that was put in danger because of the actions of all the defendants involved in the plaintiff's arrest.

21. While the plaintiff was left handcuffed too tight to a steel desk in the interrogation room, he noticed that the overhead fixtures or lights began flashing on and off rapidly like fractions of a second apart, for a period of time that seemed to last more than ten minutes. The flashing of the overhead lights stopped suddenly enough to give the defendants a chance for a break then they began again flashing the overhead lights rapidly more and more the plaintiff has now lost his eye vision and has wear eye glasses, due to the actions of the defendants who flashed the overhead lights on and off for thirty minutes at least taking short breaks to rest and starting again. During the flashing of the lights the plaintiff looked thru the side interrogation window which was a tinted glass but was transparent enough due to the constant flickering of the lights, to show an outside light on the other side of the glass. From this viewpoint plaintiff could see defendant Mooney deliberately flicker the light switch on and off purposely doing so intentionally.

22. After the defendants stopped flashing the overhead lights in a blinding manner Mooney returned with Ciuffi and began interrogating the plaintiff, but as soon as defendant Ciuffi questioned plaintiff he immediately asked to speak to a lawyer, his lawyer. The interrogation of the plaintiff never ceased despite the repeated requests made by the defendant to stop all questions and to speak to his lawyer. The plaintiff informed Mooney and Ciuffi while being

held in a state of serious physical discomfort and pain due to the fluid in his knee and
that the handcuff was placed on him too tight, the plaintiff repeatedly asked to go to
the bathroom, use a phone to call his family, and to stop the interrogation and all  the
unwarranted questioning of defendants Mooney and Cuiffi. The plaintiff was then coerced to
sign documents and take a DNA swab due to the pressure of police officers Cuiffi repeated
seris of threats. Defendant Ciuffi stated to the plaintiff the following statements, "
Who do you think you are?, Giving me orders, where do you think your at? It doesn't work
like that , look your not doing anything or going anywhere until you answer some questions,
you forgetting where your at, nigger? you don't have a choice and you don't a right to
anything here, it doesn't work like that, look your not doing anything or going anywhere
to answer these questions now, if you don't we're going to keep uou here as long as we like,
and do whatever we please, you think not, you think someone is going to believe a nigger
over a cop, we can do whatever we want to you nobody is going to believe you, noboby is
going to believe a big, stupid nigger like you, Dale this ain't law and order, this is
real life, you know what goes down in this precint you been here before, I'm being nice
to you, I don't want to see you leave here with a broken nose or worst just answer these
little questions, I see your arm over there it doesn't look so good, so I"LL tell you what,
just answer these questions and I'll let you keep your arm, I'll even let you use the
bathroom, get a call and even talk to a lawyer but first you got to answer these questions
you don't have a choice just cooperate so we don't have to do anything that'll put you in
the hospital just answer these questions and sign whatever I tell you. The plaintiff was
left in a state of fear, shame, and felt the ugly presence of racial discrimination
plaintiff was then in a state of total shock, terror, and physical, emotional and mental
pain that was unbearable and began to cry while handcuffed.
23. The foul treatment of plaintiff was continue as he was smacked by the defendant while
being handcuffed he was told the that officers would leave no physical marks as proof
of assault but that didn't prevent defendants Mooney use of excessive force and Cuiffi's
repeated threats, out of fear the plaintiff complied with all of the defendants requests.

24. The plaintiff experienced one of the worst days of his life, he was then repeated harassed, called racial slurs, and punched in the gut when he refused, he was told to hold it down, thinking he was just being charged for two petty offenses, not knowing the defendant intentions to falsely accuse him of a crime in which he did not participate in. Defendant Rodriguez joined defendant Mooney and Cuiffi in the interrogation and excessive force process but did not touch the plaintiff or ask him questions he just continued to "mock" interrogation and cruel treatment of plaintiff inside a unmarked police vechile.

25. After plaintiff was processed inside the 47th precinct Defendants Mooney and Rodriguez removed him from the interrogation room and re-cuffed plaintiff and added leg restraints, the plaintiff was still crying in pain and mental shock due the experienced of cruel torture inflicted upon the plaintiff due to the actions of the defendants. Custody of the plaintiff was then given to defendants Rodriguez and Carrasquillo, who placed plaintiff in the back of an unmarked police vechile. Plaintiff placed plaintiff double shackled in the rear and then pushed the front seat ahead of plaintiff all the way back crushing the plaintiff's legs and adding more pressure upon the plaintiff's already damaged left leg. Plaintiff began to cry due to the pain, and then before the start of the ransport defendant Rodriguez, placed himself next to the plaintiff forcing his body weight against the plaintiff smushing him into the rear window. Plaintiff began having difficulty breathing so Carrasquillo opened the rear window plaintiff was smushed against so he did not pass or suffocate to death. Rodriguez than began interrogating plaintiff again accusing him of homicide, rodriguez stated "Look I'm not the bad guy here, just talk to me, we'll keep this off the record, for my own satisfaction, just tell me it was an accident, I'll ease of you, I promise, look dont worry I'll keep this off the record, I wont bring this up in court, I dont want to hurt you just fess up. Out of fear, plaintiff just stated"yeah, it was an accident" but he never said he killed anyone or did anything criminal, in the precinct or in the car being transported to the Central Booking Courthouse in the Bronx County. All the plaintiff did was comply to police officers that physically assaulted him, call him racial slurs, coerce him to sign documents, due to heavy amount of pressure placed upon the plaintiff, plaintiff was reacting out of fear of his life.

26. The defendants Rodriguez and Ciuffi with the instructions and direction of defendants Bronx D.A. and Scaccia submitted and testified false testimony of declarations attributed to the plaintiff, intentionally maliciously, and in order to further cover up the acts of all the defendants involved in this case, including defendants use of force in the 47th precint and false statements attributed to the plaintiff, who never said the statements shown or given during the grand jury proceeding that was held in the Bronx County Criminal Supreme Court. The defendants committed a conspiracy by the false arrest of the plaintiff and then subsequently implemented their own knowingly false admissions and declarations attributed directly to the plaintiff in order to wrongfully maliciously, falsely obtain an indictment against the plaintiff and further the undue harassment of the plaintiff. The defendants knew beforehand that the plaintiff's arrest was illegal, and the officers also knew of their prior unconstitutional treatment of the plaintiff, therefore, the evidence presented against the plaintiff in the pending state proceeding indictment#: 3214-2009, is a result of perjurized statements, false documents, and police and prosecutorial misconduct which violated the plaintiff's right to due process.

27. Defendants knew before the plaintiff was arrested that a witness came forward and testified to agents of Defendant City and Commissioner Kelly that another individual was said to have been the sole criminal agent behind the crime the plaintiff is currently being held and accused for. All of the defendants failed to prosecute this person on the alleged charge and then conspired against the plaintiff to falsely arrest the plaintiff, (see, Exhibits). Regardless the initial S.A.P. warrants were defective and were intentional used in bad faith to procure an arrest of the plaintiff knowing beforehand under color of law such warrant may not be used to gain entry into plaintiff's residence to effectuate a felony arrest armed with a warrant that was not issued on probable cause.

28. The defendants in this case also witheld the exculpatory evidence of a third who was accused of the crime the plaintiff is currently being prosecuted for, such practice by the defendants shows evidence of the conspiracy to interfere with the plaintiff's civil rights. Defendant Scaccia did not release the exculpatory evidence of another who was said by a witness to be the criminal agent responsible for the

crime the plaintiff is accused of. Defendant Scaccia under the direction of defendants City

and Bronx D.A., intentionally witheld the exculpatory evidence until June or July in the

year of 2013. Such action was done deliberately to purposely frustrate the plaintiff and

intentionally hinder his defense of the false charges that were brought against him. This

violation has been labeled by the Courts as a Brady violation and consists of a violation

of Due Process and the investigatory power of the states grand jury pursuant to Brady v.

Maryland, 373 U.S. 83.

29. The warrant of arrest that was issued and executed willfully and maliciously, solely for

the purpose described above and for no lawful purpose, and defendants knew that there was

no ground for the plaintiff's arrest on June 22,2009 at allegedly 4:30 p.m..

30. Defendant's acts were unlawful, wilful and malicious, and were designed to compel plaintiff

illegally into police custody and arrest him for a crime they knew he did not commit.

31. The warrants of arrest that were used to arrest the plaintiff were the results of

summons issued against the plaintiff that were never served upon the plaintiff for two petty

offenses which under color of law by the state's criminal statues are not crimes, and not

based on probable cause, and the state court itself did not have jurisdiction or authority

to order police officers to enter the plaintiff's residence and arrest him such use of

the invalid, defective warrants was an abuse of process by the defendants and also a cause

of action pursuant to 42 U.S.C. Section 1983.

Second Cause of Action

32. Plaintiff repeats paragraphs 1 to 31.

33. On June 22, 2009, in the confines of the 47th Precinct of the N.Y.P.D., on 4111 Laconia

Avenue, in Bronx County of New York, the defendants Mooney, Ciuffi assaulted the plaintiff by

restraining him with handcuffs in such an manner that it caused great pain physically,

slapping him in the face in a violent manner and punching him in the stomach and abdomen area,

and violently rapidly flickering the overhead lights in the interrogation room to cause the

plaintiff blindness, confusion and continue the acts of torture inflicted upon the plaintiff.

34. The actions of the defendants were wilful, intentional and unwarranted, and without any

just cause or provocation.

35. The amount of damages sought in this action exceeds the jurisdictional limits of all lower courts which would otherwise would have jurisdiction and such excessive force used by the defendants is not a cause of action that can be brought in the Bronx County Criminal Supreme Court.

36. On june 22, 2009, the defendants Brown and Riveria unlawful entered the plaintiff's home and illegally arrested and brought him to the 47th precinct. Before the plaintiff was arrested defendants Brown and Riveria pulled out their firearms and pointed them at the plaintiff with the intention to shoot him if he did not comply to the defendant's orders. The plaintiff was lawfully in his home at that time and the defendants actions were willful, intentional and without any cause or provocation, the actions of the defendants put the plaintiff in a state of fear for his life.

37. Upon information and belief, the defendants conspired to perform a illegal subterfuge to illegally charge the plaintiff with a murder he did not commit, defendants carried an elaborate scheme to forceful enter the plaintiff's home and arrest him by threatening his life. Defendants Brown and Riveria were acting in concert with defendants Mooney, Cuiffi, Scaccia, Bronx D.A., Carrasquillo, Commissioner Kelly, and Rodriguez. After the illegal arrest the plaintiff was taking to the 47th precint were he was unconstitutionally, illegally, and maliciously exposed to severe harassment, verbal abuse, assault, torture, amd mental cruelty. Defendant's acts were willful and malicious, and were intended to frighten and shock plaintiff, and to cause physical, mental, and emotional illness. Consequently, plaintiff endured severe emotional and mental suffering and distress, sleeplessness and aggravation, all of which caused plaintiff to become physically debilitated, Defendants made ridiculous remarks, sounds, racial slurs, physical and legal threats all in close proximity to the plaintiff.

38. At all relevant times the defendants The City, Commisioner Kelly, Bronx D.A., Scaccia, Mooney, and Ciuffi, authorized and empowered the defendants Brown and Riveria to attend to their duties and thus constituted them agents and employees of these defendants.

39. On or about June 22, 2009, defendants Brown and Riveria, while acting within the scope of their employmentof the defendants The City and Commissioner Kelly, responded to the directios of defendants

Mooney and Ciuffi.

40. On or about June 22, 2009 the plaintiff was placed in apprehension of imminent bodily harm by the defendants, the defendants caused the plaintiff to be confined or restrained.

41. Plaintiff repeats  paragraphs 1 through 40. By reason of the wilful, reckless and malicious conduct of the defendants, the plaintiff is entitled to recover punitive damages.

THIRD CAUSE OF ACTION: CIVIL RIGHTS VIOLATION

42. Plaintiff repeats paragraphs 1 through 41.

43. On or about June 22, 2009, the defendants Brown and Riveria apprehended the plaintiff at his residence, handcuffed him, ignored plaintiff's request to allow him to put on a brace to support his leg, and not be interrogated, held his arms behind his back, and transferred his illegal custody to Defendants Mooney, Ciuffi, inside the confines of the 47th precint. Once inside the 47th precint of the NYPD, defendants Mooney, Ciuffi assaultled the plaintiff, made verbal threats and racial slurs directed at the plaintiff and coerced him in a illegal manner.

44. Prior to the arrest of the plaintiff, the defendants conspired to and did deprive plaintiff of his life and liberty as would shock the conscious in violation of his rights as guaranteed by the Fourth and Fifth Amendments to the United States Constitution. The defendants also deprived the plaintiff of his right not be life and liberty without due process of law as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. All of the plaintiff's rights were violated by defendants use of brutal, excessive, unreasonable, and unnecessary physical force upon the plaintiff.

45. Upon information and belief, defendants City and Commissioner Kelly, NYPD, and all of their deputies, agents, employees, officers, and servants utilized this method of detaining and apprehending plaintiff pursuant to a policy and procedure of defendants City, Commissioner Kelly and NYPD, which policy and procedure authorized such a method of apprehension in all cases where individuals attempt to evade arrest without consideration of the degree or nature of the wrongful conduct for which the subject is allegedly sought and without regard to the Constitutional rights of life, liberty and due process of the individual.

46. As a proximate result of the conduct of the defendants, the plaintiff suffered mental, physical and emotional pain and suffering and was deprived of his United States Constitutional rights of life, liberty and due process, all to his damage in an amount of money which exceeds the jurisdictional limits of all lower courts which might otherwise have jurisdiction over this cause of action.

47. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

48. All of the aforementioned acts by Defendants deprived Plaintiff of the rights, privileges and immunities guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States, said violations being actionable under 42 U.S.C. § 1983.

49. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police and law enforcement officers, and quasi-judicial officers or agents of the State of New York, with the actual and/or apparent authority attendant thereto.

50. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police and law enforcement officers, pursuant to the customs, usages, practices, procedures, and rules of Defendant CITY and its NYPD, all under the supervision of ranking officers of said department.

51. Defendants, collectively and individually, while acting under color of state law, violated Plaintiff's civil rights; these violations were driven and motivated by, reflective of and carried out pursuant to a custom, usage, practice, procedure or rule of Defendant CITY, which is forbidden by the Constitution of the United States.

52. By these actions, these Defendants have deprived Plaintiff of rights secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually liable.

53. By reason of the wilful, reckless and malicious conduct of the defendants, the plaintiff is entitled to recover punitive damages.

FOURTH CAUSE OF ACTION: MALICIOUS PROSECUTION

54. Plaintiff Dale Robertson repeats and re-alleges each and every allegation set forth in

the preceding paragraphs with the same force and effect as if fully set forth herein.

55.  On or about June 22, 2009 defendants Brown and Riveria, arrested the plaintiff for two violations of  the Penal Law and Vechile Traffic Law, riding a bicycle on a sidewalk and disorderly conduct for public urination. On an unknown date to the plaintiff, Defendants City, Bronx DA, the State of New York, and a unknown police officer, maliciously and without reason or probable cause filed an simplified information(s) against the plaintiff in the Bronx County Criminal Court, in the Bronx County of the City of New York. On or about June 23, 2009, the plaintiff was arraigned upon the two simplified informations, pleaded not guilty and the petty informations were dismissed in favor of the plaintiff for lack of sufficient evidence to sustain the charges, the plaintiff was never served a summons or desk appearance ticket pertaining to the alleged petty offenses, and the illegality of the arrest.

56. On June 23, 2009, plaintiff was placed by the Judicial hearing officer of the Bronx County Criminal Court, in the Court to answer against the charges filed against him  for the unjust, false, and malicious charges abovementioned and upon the bench trial and judicial hearing the plaintiff succesfully defended himself against the charges brought in bad faith.

57. At the end of the judicial hearing and bench trial the plaintiff was found not guilty and the charges were dismissed in the favor of the accused and the arrest record pertaining to the dismissed simplified actions/informations were ordered sealed by the Bronx County's Judicial Hearing Officer. However, the plaintiff was being held on a charge of murder that was based on the arrest record pertaining to the dismissed charges. In instigating and procuring the arrest of the plaintiff upon the above-described false and malicious charges and causing him tried for such charges and the fruit therefrom, defendants acted maliciously, in a conspiracy to deprive the plaintiff's constitutional rights, without reasonable or probable cause and with full knowledge that the charges made before the court were false and untrue.

58. As a result of the foregoing, plaintiff is being currently harassed by a prosecution of a jurisdictionally defective proceeding brought in bad faith meant solely to further the illegal confinement iniated by the defendants. Plaintiff has been injured in his good name

and reputation and suffered great mental and bodily distress during his imprisonment and currently, and has expended various sums in costs and fees in defending himself upon the charges and in procuring his well being due to his incarceration, all to his damage.

59. The defendants started the legal proceeding against the plaintiff in both the Bronx County Criminal court and Bronx County Criminal supreme Court in actual malice, without probable cause that the offenses could have suceeded, and the charges of the petty offenses ended in failure. The plaintiff was unlawfully arrested pursuant to two defective warrants (see also, plaintiff's Exhibits) and seeks redress in a action for malicious prosecution pursuant to 42 U.S.C. § 1983 (see also, Broughton v. State, 37 N.Y.2d 451, cert. denied sub nom. Shanbarger v. Kellogg, 423 U.S. 929 [1975]).

60. Defendants CITY, Scaccia, and the Bronx D.A. are continuing a legal proceeding currently against the plaintiff (indictment#: 3214-2009, Bronx County) that was based on an arrest record that was ordered sealed by the State Court, under color of law and Criminal Procedure Law (New York) § 160.50, the arrest record pertaining to the dismissed offenses can not be used for prosecutorial purposes. However, the defendant's perversion of proper legal procedures from a prior judicial proceeding is currently causing the plaintiff to be maliciously prosecuted.

61. All the acts attributed to the defendants and all parties mentioned by the plaintiff, were committed while acting in the course of their employment by the State of New York and the City of New York and for the purpose of advancing the state's and city's interest in this matter, without reasonable or just cause or provocation.

62. Thereafter the State and City of New York, through its agents and employees, maliciously prosecuted plaintiff on the charge of murder in the second degree and also the petty offenses in the Bronx County Criminal Court. The defendants persisted in this prosecution with full knowledge and reckless disregard of the fact that there was no evidence to support these charges. This malicious behavior persisted from June 22, 2009, and is currently continuing in regards to the charge of murder in the second degree that was founded out of the fruit of the arrest for the petty offenses and is false, fraudelent, and perjurious. The defendants Ciuffi and Rodriguez

upon the direction of Defendants Scaccia and the Bronx D.A. testified before the Bronx Jury false statements, declarations attributed to the plaintiff in the futherance of a conspiracy committed against the plaintiff maliciously to continue his incarceration wrongfully, even though the original charges the plaintiff was arrrested illegally in his home pursuant to invalid, defective warrant was dismissed the police officers and defendants did not have the authority to enter the plaintiff's residence to effectuate a arrest pursuant to said defective warrants for the two petty offenses, and subsequently used excessive force and coercion to mask the illegality committed by the defendants in this case. The defendants are currently engaging in a illegal pattern of activity which is a net result of the continuous violations and conspiracies committed against the plaintiff maliciously to keep an unfounded prosecution ongoing. As a result of the defendants actions the plaintiff has been damaged for life and has and contuing to suffer severe emotional pain and injury, shame and humliation, loss of freedom, medical and physical injuries, stress caused by unlawful imprisonment, break and loss of personal, buisness and family relationships, and other damages.

63. Attached to this complaint as Exhibits are documents showing the illegal acts of the defendants.

FIFTH CAUSE OF ACTION: CONSPIRACY

64. Plaintiff Dale Robertson repeats and re-alleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

Prior to June 22, 2009, the plaintiff lawfully resided at his home at 1027 East 211th Street, in the Bronx County of New York City, in the basement apartment of said residence, which is a two-family duplex, whith diveded compartments and apartments as well as seperate entrances. The plaintiff had lived at this residence for over 15 years prior to this date.

65. Prior to June 22, 2009, the defendants conspired with each other and formed a deliberate design and purpose to injure plaintiff and to cause him to lose his freedom, and in futherance of such unlawful design and purpose, made the statements set forth below and did various wrongful and unlawful acts alleged below.

66. As a result of the conspiracy, without any cause, warning or notice, plaintiff was suddenly

kidnapped from his home by the treats issued by defendants Brown and Riveria, after defendants illegally and without consent entered the plaintiff's home at the direction of Defendants Mooney, Ciuffi, Scaccia, and the Bronx D.A., the defendants furthered their conspiracy against the plaintiff by their insertions and use of false and malicious statements and their wrongful and unlawful acts.

67. In futherance of their design and conspiracy, and for the purpose of causing plaintiff to his freedom, livihood, reputation in his community, violating and depriving the use of his guaranteed constitutional rights, between June 22, 2009 to this current date, defendants Ciuffi, Rodriguez, Carrasquillo, Scaccia, and Bronx D.A. falsely and maliciously stated to the Bronx County Criminal Supreme Court and the People of New York, that plaintiff killed Stacey Inman Vaught, he did not intend to kill her and various other false statements that were fabrications used as evidence in the pending indictment #: 3214-2009 (see also, Plaintiff's Exhibits). Defendants accused plaintiff of being guilty of second degree murder even though prior to the conspiracy and arrest committed against the plaintiff the defendants had information as well as testimony that someone else besides the plaintiff committed the murder that the plaintiff was framed by the defendants of committing. (see also, Plaintiff's Exhibits)

68. Further, in pursuance of the conspiracy, between June 22, 2009, and _____, 2009, Defendants Ciuffi and Rodriguez testified in front of the Bronx County Grand Jury under the guidance and direction of Defendants Scaccia and the Bronx D.A., that the plaintiff committed the crime of Murder falsely, by making unfounded, and false accusations attributed as statements that were attributed to the plaintiff. (see, The People's Voluntary Disclosure; Plaintiff's Exhibits) The plaintiff's knowingly and intentionally entered false evidence in the form of testimony to futherly deprived the plaintiff of his constitutional rights to due process and unreasonable searc and seizure that is guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. The defendants here conspired and made these false allegations and entered false evidence to further harass the plaintiff, keep the plaintiff wrongfully incarcerated mask the excessive force, false arrest, abuse of process, and prosecution borne in bad faith that was excuted by all the defendants wrongfully, maliciously, and illegally against the plaintiff.

69. Solely as a result of defendants' statements and acts, plaintiff was and currently is wrongfully and falsely imprisoned.

70. The defendants conspired with and among each other to defraud the plaintiff and the State of New York. Defendants Rodriguez, Ciuffi, Scaccia made false representations attributed to the plaintiff to maliciously prosecute and falsely imprison him. The defendants knew their representations made in the Bronx County Criminal Supreme Court and the their police records were false.

71. Defendants, collectively and individually, while acting under color of state law, violated Plaintiff's civil rights; by these actions  defendants have committed a conspiracy to interfere with the plaintiff's civil rights, obstructed justice, intimidated party, witness, or juror, committed a conspiracy against the plaintiff with purposeful intent to deny plaintiff a U.S. citizen equal protection of law, racially based their prosecution of the plaintiff due to his status as an Afro-Amercan, and use force and repeatedly threatened him to iniate a false prosecution, in violation of 42 U.S.C. Sections 1983, 1985 (2) and 1986, for which the Defendants are individually liable.

72. The acts complained of were carried out by the aforementioned individual defendants in ther capacities as police and law enforcement officers, quasi-judicial officers, pursuant to the customs, usages, practices, procedures, and rules of The State of New York, Defendant City and its NYPD, Comm. Kelly, and Bronx D.A., all under the supervision of ranking officers of their respective departments.

73. The acts that were complained of were racially motivated by the fact the plaintiff is a black minority male and plaintiff repeats paragraphs 1 to 72 to illustrate such fact, the defendants called the plaintiff the racial slur "nigger" and intimidated the plaintiff and denied his right to counsel that is guarantted by the Sixth and fourteenth Amendments  of the U,S. Constitution on the grounds that he is a Black or Afro-American Male, such acts are violations and redressable pursuant to 42 U.S.C. Sections 1983, 1985(2), and 1986, for which the Defendants are individually liable.

FIRST CLAIM FOR RELIEF: FALSE ARREST UNDER 42 U.S.C. § 1983

74. Plaintiff repeats paragraphs 1 through 73.

75. As a result of Defendants' aforementioned conduct, Plaintiff was subject to an illegal, improper and false arrest by Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the Defendants in criminal proceedings, without any probable cause, privilege or consent.

76. As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time up to this present momment and Plaintiff was at all times aware of his confinement; Plaintiff was put in fear for his safety and subjected to handcuffing and other physical restraints, excessive force, racial slurs, discrimination, torture, mental and emotional distress, injurious falsehood, fraud, cruel and unusual punishment, without probable cause.

77. As a result of his false arrest, Plaintiff was subjected to humiliation, ridicule, physical injury, mental, physical and emotional torture and distress, embrassment, slander and libel as well as disgrace before his neighbors, peers, family members and society. Plaintiff was discredited in the minds of many members of the community and will suffer a life-long irreparable injury associated with the false arrest that was placed upon the plaintiff unlawfully.

SIXTH CLAIM FOR RELIEF: UNLAWFUL ENTRY AND SEARCH

78. Plaintiff repeats paragraphs 1 through 77.

79. Defendants unlawfully entered Plaintiff's home without consent, privilege or excuse, in violation of the Plaintiff's right to be secure in his home and committed a trepass against the Plaintiff.

80. Defendants unlawfully searched Plaintiff's home, wherein Plaintiff had a reasonable expectation of privacy, without consent, privilege or excuse, in violation of the Plaintiff's right to privacy.

81. As result of  Defendants' aforementioned conduct, Plaintiff's constitutional rights guaranteed  pursuant to the Fourth and Fourteenth Amendments of U.S. Constitutuion and under color of law N.Y. Constitution Article 1, Section 12 were violated.

82. On June 22. 2009, the State and City of New York, acting through its officers, agents, servants and/or employees, arrested the plaintiff unlawfully after a unlawful entry in the basement of his residence  pursuant to a invalid, defective warrant.

83. The arrest was procured on two purported warrants that was defective on its face, void and legally insufficient to authorize the arrest of the plaintiff.

84. The defective and legally insufficient character of the warrant, rendering the warrant void, was known or should have reasonably have been known to the defendants.

85. At all relevant times, defendants Mooney, Ciuffi, Brown, and Riveria, were acting within the scope of their employment and in the futherance of the business of the State and City of New York.

86. The warrant was void, had no effect, did not permit police officers to enter the plaintiff's residence without consent, jurisdictionally defective, and was not founded on probable cause, these warrants that were used to effectuate the plaintiff's arrest did not give reference to the basement area of the plaintiff's residence or authority to police officers to search the plaintiff's residence, and gave no reasonable basis upon which to arrest him.

87. Plaintiff's arrest on June 22, 2009, and subsequent imprisonment was procured by the State and City of New York unlawfully, under void process, without just cause or reason and with malice toward plaintiff. The actions of the defendants in this case have long been violative pursuant to Payton v. New York, 445 U.S. 573; People v. Baez, 173 Misc.2d 380, 661 N.Y.S.2d 759; N.Y.C.P.L. §§ 120.80, 690.05(2)(b)(i), under color of law such actions are unconstitutional.

88. Defendants, collectively and individually while acting under color of state law, were directly and actively involved in violating the constitutional rights of the plaintiff.

89. Defendants, collectively and invidually while acting under color of state law, acquesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of Plaintiff's constitutional rigts.

90. Defendant CITY, as municipal policymaker in the training and supervision of Defendants CITY OF NEW YORK POLICE OFFICERS DANIEL RIVERIA, GORDON BROWN, NICHOLAS CIUFFI, PETER MOONEY, individua- -lly and in their official capacities, has pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violations of their rights Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. Sections 1983, 1985, and 1986 and the Constitution and laws of the States of New York.

91. The foregoing customs, policies, usages, practices, procedures and rules of Defendant CITY constituted a deliberate indifference to Plaintiff's constitutional right's.

92. The goregoing customs, policies, usages, practices, procedures and rules of Defendant CITY were the direct and proximate cause of the Constitutional violations suffered by Plaintiff as alleged herein.

93. The foregoing customs, policies, usages, practices, procedures and rukes of Defendant CITY were the moving force behind the Constitutional violation suffered by Plaintiff as alleged herein.

94. All of the foregoing acts by defendants deprived Plaintiff Dale Robertson of his constitutional rights that are guaranteed by the Fourth, Fifth, sixth, Fourteenth, Amendments of the United States Constitution and as well as New York Constitution, Article 1, Sections 6 and 12 under color of law, as a natural born citizen of the United States and the State of New York, for which the defendants are individually liable .

Seventh Claim For Relief or Cause of Action: Slander, libel, and Defamation

95. The plaintiff repeats paragraphs 1 through 94 to the same effect and force.

96. At all revelent times, the NYPD were and still are a police agency of the State and City of New York, existing pursuant to Article 11 of the N.Y. Executive Law.

97. The defendants are member, officers, agents, servants, and employees of the NYPD, as mentioned in this complaint and are employees of the State and City of New York.

98. At all revelent times in this complaint, Plaintiff, Dale Robertson, was and still is a resident of New York State and City, and is entitled to the rigts, benefits, and protection of the laws of the State of New York.

99. Upon information and belief, prior to June 22, 2009, certain members, officers, and employees of the NYPD, acting within the scope and in the futherance of their employment with New York State and City, conspired with members of the Bronx County District Attorney's Office and the Office of the Chief Medical Examiner of New York City, for the purpose of harassing, falsely imprisoning, libeling and maliciously prosecuting the plaintiff, as alleged in this complaint.

100. In futherance of this conspiracy, on June 22, 2009, employees of the N.Y.P.D. unlawfully arrested, detained and imprisoned the plaintiff. The Plaintiff was retained in custody against his will for a substantial period of time and while he was in custody, he was assaulted, threatened, harrassed, and exposed to derogatory racial slurs. The Plaintiff's arrest, detention, and imprisonment was unwarranted and without just or probable cause.

101. On June 22, 2009, the NYPD initiated certain judicial proceedings of a criminal nature against the ~~claimant~~ plaintiff. The NYPD upon information and belief had evidence in their possession since the the day of March 12, 2009, that another committed the crime in which the plaintiff is now currently wrongfully accused of (see, Plaintiff's Exhibits) but with malice the NYPD persisted and acted without probable cause initiated a prosecution against the plaintiff for the charge of murder in the second degree in violation of Penal Law section 125.25.

102. Upon information and belief, on June 22, 2009 and various dates there after, Officers,

or members of the NYPD, stated, inferred, fabricated and falsified evidence in writing and testimony in agreement with the Bronx County District Attorney's office to falsely incriminate the plaintiff with the commission of the crime. The Defendants went about the plaintiff's neighborhood and community and as well provided to the court false, fraudulent evidence and testimony that the plaintiff had committed various criminal acts and acts involving moral turpitude including murder, on dates and locations to persons presently unknown to the plaintiff due to his false imprisonment.

103. These defamatory words were entered as evidence in chief in indictment # 3214-2009, which is pending currently in the Bronx County Criminal Supreme Court and is attached in this complaint annexed to the Plaintiff's Exhibits.

104. Including making false testimony and evidence attributed to the plaintiff, Defendant Ciuffi repeatedly called the plaintiff a nigger and made all types of threats and comments after the use of excessive force meant to torture, and falsely produced inculpatory evidence

against the Plaintiff unconstitutionally.
The statements accusing the plaintiff
of committing criminal acts and various
acts involving moral turpitude were false
and untrue and have damage the plaintiff's
personal and professional reputation, caused
a loss of his liberty and freedom that is
currently still ongoing, and caused mental
and emotional scars due to racial
derogatory and defamative statements that
were used.

105. By the defendants actions the
plaintiff has suffered irreparable life
long injury, humiliation, ridicule and
disgrace.

Eigth Cause for Action and Relief: Fraud,
intentional submission on False Statements
intended solely to further injury and
harass Plaintiff

106. The plaintiff repeats paragraphs 1
through 104 with the same force
and effect.

107. On June 22, 2009, as a result of
Defendants' aforementioned conduct,

acting within the scope of their employment, under color of law. The defendants conspired together to enter false statements and testimony attributed as statements made by the Plaintiff falsely, unlawfully, with the intention to falsely keep the Plaintiff imprisoned knowing such testimony was false. In fact, at the time the defendant made the misrepresentations the facts were the defendants carried out police misconduct, used excessive force upon the plaintiff, and concocted a fictional tale of accounts to cover up and mask the police misconduct involved with the Plaintiff's arrest.

108. At the time representations were made by defendants, they were known by the defendants to be false and were made by them with intent to deceive the plaintiff, the Court, and the People of the State of New York and to induce unlawful imprisonment and cause the plaintiff to be incarcerated for a time he did not commit.

109. At the time the false representations were made by defendants, plaintiff did not know the facts that were allegedly attributed to his actions, nor did he believe the representations to be true or accurate, the testimony (see, Petioners/Plaintiff's Exhibits) entered by the Defendants were tailored made false statements that were overt acts in futherance of the conspiracy committed against the Plaintiff to deprive him on his constitutional rights and is redressable pursuant to 42 U.S.C. Sections 1983, 1985, and 1986.

Ninth Cause of Action: Intentional Infliction of Emotional Distress

110. The Plaintiff repeats paragraphs 1 to 109.

111. The Defendants by their actions as aforementioned in this complaint have caused injury to the Plaintiff by their extreme and outrageous conduct that included the excessive force, fraud, defamation/libel/slender, false

arrest and imprisonment, malicious prosecution as alleged in the aforementioned paragraphs in this complaint. ‐

112. The Defendant committed extreme and outrageous conduct against the Plaintiff with the intention to cause, or disregard with substantial probability of causing severe emotional distress due the actions of the defendants that were aforementioned in this complaint.

113  By the causation of severe emotional distress, long suffering, anxiety, and mental anguish caused by the Defendant's actions as aforementioned in this complaint the Plaintiff has suffered irreparable injury and such actions of the Defendants are redressable pursuant to 42 U.S.C. Section 1983.

Tenth Claim for Relief and Cause of Action : Temporary and Permanent Injunction of indictment/case # : 3214-2009, which is currently pending in the Bronx County Criminal Supreme Court.

114. The plaintiff repeats paragraphs 1 to 113, with the same effect and force.

115. The plaintiff alleges federal claims of excessive force, false arrest and imprisonment, a continuing malicious prosecution, inter alia under 42 U.S.C.S. Section 983. The Defendants, A city, its police department and officers are held to be liable for such aforementioned conducted described in this complaint.

116. The plaintiff requests the federal to issue a temporary or permanent injunction, staying the state's case indictment # 3214-2009, and releasing the Plaintiff from all forms of custody, at least until the end of this proceeding.

117 The Plaintiff contends a Younger Abstention pursuant to Younger v. Harris, 401 U.S. 37, would be a gross over reaction by the District Court pursuant to this complaint, and a stay until the final outcome of the state criminal proceeding against the plaintiff is unwarranted. In balancing the relevant factors, the court must hold that both the Plaintiff and the

public have a strong interest in the timely disposition of this 42 U.S.C.S. section 1983 action. Any delay would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of A party. The corresponding burden to defendants and others involved in prosecuting plaintiff was minimal given the substantive distinction between the charged conduct and the Allegations in the civil complaint. Staying the entire case until the conclusion of the criminal proceeding would have been a gross overreaction under the circumstances (see, Scheuerman v. The City of Huntsville, et al., 373 F. Supp. 2d 125).

118. The plaintiff contends his claims of conspiracy, excessive force, Assault, malicious prosecution and false arrest and imprisonment is not redressable in the pending proceedings in the state court for indictment #: 3214-2009, in the Bronx County Criminal Supreme Court, there is not adequate oppurnities in the state proceedings to raise the constitutional